**[Cite as *In re J.M.*, 2022-Ohio-2400.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| IN RE: J.M. | : | APPEAL NO. C-210514<br>TRIAL NO. F15-000720X |
| | : | |
| | : | *O P I N I O N.* |
| | : | |


Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 13, 2022


*Ginocchio Law, LLC,* and *James S. Ginocchio, Jr.*, for Plaintiff-Appellee,

*Constance Potter,* for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}   In this parental-custody case, we consider whether the trial court properly designated plaintiff-appellee ("Father") the residential parent of J.M. for purposes of school registration.   Defendant-appellant ("Mother") challenges the modification to the shared-parenting plan as an abuse of discretion, arguing the court arbitrarily assumed that prior housing instability rendered future school changes inevitable.   Because credible evidence exists in the record from which the trial court could reach its decision, we affirm the juvenile court's judgment.

I.

{¶2}   In January 2018, the parents of J.M. entered into a shared-parenting plan that granted equal parenting time on a week on, week off schedule.   The plan designated both parents as residential parents for school purposes and provided that when J.M. reached school age, he would attend the same school as Mother's older biological daughter (J.M.'s half-sister). At the time the court blessed the plan, J.M.'s half-sister attended school in the Northwest School District, where Mother lived with her fiancé. After entering into the shared-parenting plan, however, Mother's car broke down and her transportation difficulties created several challenges.   In order to be close enough to walk to work, Mother and J.M. moved in with her mother (J.M.'s maternal grandmother), where they had previously lived before residing with Mother's fiancé.  Because his maternal grandmother resided in a different school district, J.M. began attending a Head Start preschool program that fall at an elementary school in that district.

{¶3}   On Christmas Eve of 2018, Mother's paternal grandmother passed away in Cedar Lake, Indiana.  Mother withdrew J.M. from the Head Start program

2

and traveled to Cedar Lake to help settle her grandmother's estate. During the reading of the will, Mother learned that grandmother had left her some money to complete a phlebotomy certification in the Cedar Lake area. Mother asked Father if she could temporarily relocate to Cedar Lake to complete the six-week course. Father balked at that request and filed a petition for custody, alleging that Mother moved J.M. to Cedar Lake without his consent. Mother returned to Ohio within a few weeks, and subsequently (in early 2019), Mother and J.M. moved back in with her fiancé at the residence located in the Northwest School District.

{¶4} As required by the shared-parenting plan, the trial court ordered the parties to mediation on Father's custody petition. The parties agreed to keep the shared-parenting plan in place with one change, deciding that J.M. should attend school in the Southwest School District instead of the Northwest district. But enrolling J.M. in the Southwest district proved problematic because neither parent resided there. As a result of this discovery, Father moved to set aside this agreed modification to the shared-parenting plan. The trial court approved Father's motion to set aside and ordered that the original shared-parenting plan of January 2018 remain in effect. As a result, J.M. attended kindergarten at Colerain Elementary School in the Northwest School District, finishing virtually due to the Covid-19 pandemic.

{¶5} Remaining frustrated by the situation, Father next filed to terminate the shared-parenting plan in its entirety and designate himself as J.M.'s sole residential parent. His motion featured Mother's alleged pattern of moving residences numerous times, and it claimed that she attempted to relocate J.M. to Indiana and that her behavior exposed J.M. to chaos and uncertainty. Approximately one year later, with Father's petition still lingering in the courts, Mother relocated again to a residence in

the Southwest School District. Mother testified that she moved there because Southwest was still the school district that both parents preferred for J.M. In light of this move, J.M. attended first-grade at Southwest Local.

{¶6} The parties proved unable to reach a compromise in mediation this time around and Father's custody petition proceeded to trial. The magistrate ultimately denied Father's request to terminate the shared-parenting plan and designate Father as the residential parent but found that it was in the best interest of J.M. to modify the plan so that Father's residence would be used for school registration purposes. The trial court adopted the magistrate's decision over Mother's objections. Mother now appeals, claiming in her sole assignment of error that the trial court abused its discretion by designating Father as the residential parent for purposes of school registration (Father does not cross-appeal the denial of the other relief he sought).

II.

{¶7} On appeal, Mother contends that the trial court based its decision on an arbitrary assumption that Mother would move again in the future and subject J.M. to additional school district changes. R.C. 3109.04(E) details "the procedures to be followed in the event that either a parent or the trial court finds it necessary to make changes to a shared-parenting decree or plan." *Bruns v. Green*, 163 Ohio St.3d 43, 2020-Ohio-4787, 168 N.E.3d 396, ¶ 9. The trial court here declined to terminate the shared-parenting plan as requested by Father but proceeded sua sponte under R.C. 3109.04(E)(2)(b), which "applies when the domestic relations court modifies the designation of a residential parent for school purposes, but otherwise maintains both parents as residential parents with the same parental rights and responsibilities." *Fritsch v. Fritsch*, 1st Dist. Hamilton No. C-140163, 2014-Ohio-5357, ¶ 21. We review

4

a trial court's modification under R.C. 3109.04(E)(2)(b) for an abuse of discretion. *Id.* at ¶ 24.

{¶8} A trial court may modify the terms of a shared-parenting plan on its own initiative under R.C. 3109.04(E)(2)(b) when the modification furthers the best interest of the child. *Bruns* at ¶ 11. The trial court determined that it was in J.M.'s best interest to attend school in Father's district because "Mother's repeated moves to new residences [are] problematic. * * * [J.M.] would benefit from having a stable school experience." Mother criticizes this conclusion as based on nothing more than a hunch that she will move again. While conflicting testimony exists as to the number of moves and the stability of Mother's housing, we cannot say that the trial court's decision was so arbitrary, unreasonable, or unconscionable as to constitute an abuse of discretion. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218, 450 N.E.2d 1140 (1983).

{¶9} We first reiterate that the trial court declined to terminate the shared-parenting plan, as requested by Father, after thoroughly analyzing the best-interest factors included in R.C. 3109.04(F)(1) and (2). The court conducted an in-camera interview with J.M. and considered testimony from Father, Mother, the court-appointed guardian ad litem, J.M.'s paternal grandmother, and Mother's live-in fiancé. After doing so, the court explained that J.M. is well adjusted to both homes and that he desired to keep the current arrangement allowing him equal time with each parent. There was no evidence that either parent neglected or abused J.M., denied the other party parenting time, or failed to encourage the sharing of love and affection between J.M. and the other parent. And while communication between Mother and Father could become strained at times, as in many co-parenting

5

situations, the court commended them for working collaboratively to make decisions for J.M.'s benefit even when they disagreed.

{¶10} Instead, the trial court modified section 2 of the parties' shared-parenting plan to reflect that "Father's residence shall be used for registration purposes." The court modified only this one term of the shared-parenting plan, which it was authorized to do so long as it furthered J.M.'s best interest and did not change the allocation of any parental rights or responsibilities. *See Dennis v. Dennis*, 1st Dist. Hamilton No. C-210370, 2022-Ohio-1216, ¶ 14. " 'Because the trial judge is in the best position to evaluate the child's best interests, a reviewing court should accord great deference to the decision of the trial judge.' " *Davis v. Flickinger*, 77 Ohio St.3d 415, 420, 674 N.E.2d 1159 (1997), quoting *Pater v. Pater*, 63 Ohio St.3d 393, 403, 588 N.E.2d 794 (1992) (Resnick, J., concurring in part and dissenting in part). Thus, we can only find an abuse of discretion "if competent, credible evidence does not support the juvenile court's decision regarding [J.M.]'s best interest or if the court applies the wrong legal standard." *In re E.R.M.*, 1st Dist. Hamilton No. C-190391, 2020-Ohio-2806, ¶ 12.

{¶11} On this record, we are unable to make such a determination. The shared-parenting plan originally tied J.M.'s schooling to his half-sister, who as of her third-grade year had not once attended the same school for consecutive years. Mother testified that she moved back and forth between her fiancé's house and her mother's house a number of times, before moving again to her current residence. The trial court recognized that two of Mother's recent moves were made to resolve concerns raised by Father and the guardian ad litem, and that her current housing situation is much improved. Nonetheless, it was neither unreasonable nor improper for the trial court

to consider these past experiences in its decision. "In fact, courts have recognized that a parent's past history is one of the best predictors of future behavior." *In re W.*, 4th Dist. Athens No. 05CA4, 2005-Ohio-2977, ¶ 28. Given Mother's history of moving and enrolling her older child at different schools, credible evidence existed from which the trial court could conclude that J.M.'s educational interests were best served through enrollment in Father's school district. Accordingly, the trial court did not abuse its discretion.

\*       \*       \*

{¶12} In light of the foregoing analysis, we overrule the assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P. J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion