[Cite as *Kurzen v. Kurzen*, 2021-Ohio-1222.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

Gene P. Kurzen, Jr.                                    Court of Appeals No. H-20-008

    Appellant                                     Trial Court No. DR 20009 0729

v.

Brenda L. Kurzen (Bub), et al.              **DECISION AND JUDGMENT**

    Appellee                                      Decided: April 9, 2021

* * * * *

Shelly L. Kennedy, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Huron County Court of Common Pleas, Domestic Relations Division, which overruled objections to the magistrate's decisions on child custody and granted parenting time. For the reasons set forth below, this court affirms the judgment of the trial court.

# I. Background

{¶ 2} After three years of marriage plaintiff-appellant, Gene P. Kurzen, Jr., filed a complaint for divorce from defendant-appellee, Brenda L. Kurzen, now known as Brenda L. Bub.  The two additional co-defendants are not parties to this appeal.

{¶ 3} As journalized on May 24, 2010, the trial court granted the parties a divorce and decreed, among other matters, shared parenting in accordance with the approved joint shared parenting plan for their minor child.  The trial court designated appellee the residential parent for school placement purposes.

{¶ 4} A second child born during the marriage was determined by the trial court to not be appellant's child and is not a subject of this appeal.  On March 2, 2010, the trial court ordered the addition of the second child's father as a co-defendant.

{¶ 5} On December 27, 2011, appellant sought to modify the joint shared parenting plan alleging the plan was no longer in the best interest of the parties' child. By order journalized on June 27, 2012, the trial court approved the parties' first amended joint shared parenting plan for their minor child, and pursuant to R.C. 3109.04, decreed, among other matters, shared parenting in accordance with the first amended joint shared parenting plan.

{¶ 6} On October 14 and December 9, 2016, appellant filed motions to show cause against appellee for allegedly violating his court-ordered parenting time schedule with their child.  On December 9, 2016, appellant also filed a motion to reallocate parental

2.

rights and responsibilities by terminating the first amended joint shared parenting plan and naming appellant as the residential parent and legal custodian of the minor child. Appellant alleged such reallocation was in the best interest of the child because appellee's withholding parenting time without justification was a significant change in circumstances and compelled termination of the shared parenting plan. Appellant further alleged that appellee lacked justification because "the Huron County Sheriff's Office and the Huron County Department of Job and Family Services have investigated [appellee's] concerns and neither have taken any formal action with respect to said investigations."

{¶ 7} Then on January 23, 2017, appellee filed a motion to terminate the June 27, 2012 shared parenting decree and reallocate parental rights and responsibilities by naming appellee as the custodial parent and legal guardian of the minor child. Appellee alleged the child "has expressed severe fear and anxiety at being at [appellant's] residence. * * * [I]t is clear that [the child] being at [appellant's] home in the current situation could be severely detrimental to his physical, mental and emotional well being. * * * [M]aintaining shared parenting is clearly not in [the child's] best interest at this time." Appellee argued that "an in camera interview of [the child] would be appropriate so that the child can express his current concerns to the court." Appellee averred in an accompanying affidavit that starting in August 2016, the child complained of being sexually victimized at appellant's home with appellant and with appellant's girlfriend's son. In her motion, appellee alleged, "there is an ongoing children services investigation that needs to be completed and [the child] is in need of further counseling whether he be

3.

aggressor or victim." Appellee further averred in her affidavit, "Irrespective of who the aggressor and who the victim is, in this situation, it is clear that [the child] spending time at [appellant's] house until this situation is fully resolved is not in [the child's] best interest."

{¶ 8} On February 15, 2017, the parties filed joint stipulations regarding specific dates between August and December 2016, when "[appellant] was entitled to parenting time with the minor Child * * *, that said parenting time did not occur as ordered, and said stipulation constitutes [appellant] meeting its burden in establishing a prima facie case for contempt in both pending Motions to Show Cause filed in this matter."

{¶ 9} Significant portions of the record are sealed because of the investigation of the allegations of the minor child being sexually victimized. After a hearing held on February 27, 2017, the magistrate ordered, as journalized on March 8, 2017, that among other matters, the minor child was added as a party defendant and was appointed a guardian ad litem.

{¶ 10} The trial court magistrate held additional hearings, along with an in-camera interview of the minor child, and as journalized on July 2, 2019, the magistrate ordered, among other matters, to terminate the joint amended shared parenting plan, to designate appellee as the residential parent and legal custodian of the minor child, and to grant appellant parenting time according to the court's standard policy on parenting time with certain conditions.

4.

{¶ 11} Also journalized on July 2, 2019, the trial court found the magistrate's decision was supported by competent and credible evidence and adopted the magistrate's decision. The trial court then ordered, among other matters, it was in the best interest of the child to terminate the May 20, 2010 joint shared parenting plan and the June 26, 2012 first amended joint shared parenting plan, to designate appellee as the residential parent and legal custodian of the parties' minor child, and to grant appellant parenting time in accordance with the court's standard policy on parenting time with the condition "that [appellant] shall not permit the child of [his girlfriend] in the household while exercising parenting time with [the parties' minor child]."

{¶ 12} Appellant and the guardian ad litem filed objections to the magistrate's decision. On February 27, 2020, the trial court overruled all objections and, again, adopted the magistrate's decision after identifying the record he reviewed. The trial court stated in its judgment entry that it conducted "a careful and independent review of the matter, including the transcripts of proceedings, [and found] that the Magistrate has properly determined the factual issues, that the Magistrate has applied the law correctly to the facts, and that the facts as found by the Magistrate are supported by competent, credible evidence and further support the conclusions of law reached by the Magistrate."

{¶ 13} Pursuant to R.C. 3109.04(E)(1)(a), the trial court agreed with the magistrate and found "a change of circumstances since entry of the parties' prior decree allocating parental rights and responsibilities." The magistrate found in its prior decision that in response to the sexual victimization allegations, appellee "filed a report with local

5.

law enforcement authorities * * * [and] that the local child protective services agency also intervened." As a consequence, the magistrate found that appellant "has exercised no parenting time with the child since mid-September 2016."

{¶ 14} Pursuant to R.C. 3109.04(E)(1)(a), (E)(2)(c), (F)(1) and (F)(2), the trial court agreed with the magistrate and ordered to terminate the May 20, 2010 joint shared parenting plan and the June 26, 2012 first amended joint shared parenting plan, to reallocate parental rights and responsibilities, and to designate appellee the residential parent and legal custodian of the parties' minor child.

{¶ 15} Pursuant to R.C. 3109.051(D), the trial court agreed with the magistrate and ordered to grant appellant "parenting time with the parties' minor child in accordance with this Court's standard policy, Appendix 'B,' a copy of which is attached hereto and specifically incorporated herein by reference; further, that [appellant] shall not permit the child of [appellant's girlfriend] in the household while exercising parenting time with [the parties' minor child]." The trial court further agreed with the magistrate and ordered to permit appellant "to enroll the parties' minor child in counseling and/or have an assessment to assist the child in adjustment to resumed parenting time with [appellant.]"

{¶ 16} The trial court then adjudicated appellee in contempt for failing to comply with the court-ordered visitation by appellant from August 26 to 29, 2016. The trial court agreed with the magistrate's decision, despite the magistrate acknowledging appellee acted on the directives of the Huron County Children's Services agency when she

6.

withheld appellant's parenting time. The trial court sentenced appellee to serve three days in the Huron County Jail with purge conditions, which she eventually met.

{¶ 17} Appellant timely filed this appeal setting forth two assignments of error:

> I. The court abused its discretion in upholding the Magistrate's Decision, as the Magistrate erred in ruling that the child's best interest was served by naming Appellee residential parent and legal custodian.

> II. The court abused its discretion in ruling that the child's best interests were served by allowing Appellant only a standard visitation schedule.

## II. Objections to Magistrate's Decision

{¶ 18} In support of his first assignment of error, appellant argues the trial court abused its discretion when it failed to designate appellant the residential parent and legal custodian of the child. Appellant concedes the magistrate found three factors favoring appellee: R.C. 3109.04(F)(1)(b) and (c) and (F)(2)(e). Appellant argues the magistrate found six factors neutral to either party: R.C. 3109.04(F)(1)(a), (d), (e), (g), (h) and (j). On balance, appellant argues that if the magistrate actually gave no weight to the discredited allegations of sexually victimizing the child, then the manifest weight of the evidence showed four factors in favor of awarding custody to appellant: R.C. 3109.04(F)(1)(f), (g), (i) and 3109.04(F)(2)(b). He argues, "This results in the factors supporting Appellant to be labeled the residential parent to outweigh the factors that support Appellee continuing to be labeled the residential parent."

7.

{¶ 19} Where a party timely files objections to a magistrate's decision, the trial court is required to rule on the objections after "an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). This "independent review" is a de novo review by the trial court. *Brancatto v. Boersma*, 6th Dist. Lucas No. L-12-1271, 2013-Ohio-3052, ¶ 8. We find the trial court explicitly stated the scope of its independent review of the record before it.

{¶ 20} We review a trial court's ruling on the objections to a magistrate's decision for an abuse of discretion. *Id.* at ¶ 9. Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 21} The record shows appellant filed objections to the magistrate's decision on July 9, 2019, and on January 21, 2020. We find appellant's arguments stated in his objections are substantially similar to his arguments in his first assignment of error on appeal.

### A. Termination of Shared Parenting Plan and Decree

{¶ 22} Both appellant and appellee sought termination of their joint shared parenting plan. A "shared-parenting plan is designed to facilitate the award of joint residential and legal custody under a shared-parenting decree by providing terms and provisions that the parties have agreed to in advance." *Bruns v. Green*, Slip Opinion Nos.

8.

2019-1028 and 2019-1178, 2020-Ohio-4787, ¶ 19. By its February 27, 2020 decision and judgment entry the trial court terminated the prior shared parenting decrees that incorporated the parties' original and first amended joint shared parenting plans, which were also terminated. *Id.* at ¶ 4, fn. 1 ("R.C. 3109.04(D)(1)(d) requires that an approved shared-parenting plan be incorporated into a shared-parenting decree that orders shared parenting. Accordingly, when a court terminates a shared-parenting plan, the shared-parenting decree also terminates.").

{¶ 23} R.C. 3109.04(E)(2)(c) and (d) govern a trial court's decision to terminate a shared parenting decree that includes a shared parenting plan and the consequence of that decision. *Id.* at ¶ 12-13. R.C. 3109.04(E)(2)(c) and (d) state:

> In addition to a modification authorized under [R.C. 3109.04(E)(1)]:
>
> * * * (c) The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under [R.C. 3109.04(D)(1)(a)(i)] upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. * * *. (d) Upon the termination of a prior final shared parenting decree under [R.C. 3109.04(E)(2)(c)], the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under [R.C. 3109.04(A), (B), and (C)] as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made.

9.

**{¶ 24}** Although the trial court determined changed circumstances existed pursuant to R.C. 3109.04(E)(1)(a), it was not required under R.C. 3109.04(E)(2) to first find changed circumstances, in addition to considering the best interest of the child, prior to terminating the shared parenting plan and decree and designating one parent as the residential parent and legal custodian. *Bruns* at ¶ 21; *Green v. Richards*, 6th Dist. Wood No. WD-12-039, 2013-Ohio-406, ¶ 26, fn. 1. R.C. 3109.04(E)(2) authorizes the trial court, on its own initiative or at the request of one or both parents, to terminate a shared parenting decree that includes a shared parenting plan when it is in the best interest of the child. *Id.* at ¶ 12; *Hill v. French*, 6th Dist. Lucas No. L-20-1077, 2021-Ohio-24, ¶ 29.

**{¶ 25}** R.C. 3109.04(F) addresses how a court determines the best interest of the child under the statute. *Id.* at ¶ 31; *C.L. v. S.M.*, 6th Dist. Lucas No. L-17-1271, 2018-Ohio-5281, ¶ 33; *In re A.G.*, 139 Ohio St.3d 572, 2014-Ohio-2597, 13 N.E.3d 1146, ¶ 67. In domestic relations matters we are mindful that "[a] reviewing court should not substitute its judgment for that of the trial court." *Snyder v. Snyder*, 6th Dist. Sandusky No. S-92-30, 1993 WL 356939, *3 (Sept. 17, 1993). We will not disturb a trial court's determination of what is in the best interest of the child absent an abuse of discretion. *Hill* at ¶ 26.

**{¶ 26}** R.C. 3109.04(F)(1) through (3) state:

> (1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights

and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to [R.C. 3109.04(B)] regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal

offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of [R.C. 2919.25] or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

(2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in [R.C. 3109.04(F)(1)], the factors enumerated in [R.C. 3119.23], and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

(3) When allocating parental rights and responsibilities for the care of children, the court shall not give preference to a parent because of that parent's financial status or condition.

{¶ 27} Despite appellant challenging the trial court's review of the best interest of the child factors under R.C. 3109.04(F)(1) and (2), we fail to find the trial court abused its discretion.

13.

{¶ 28} Pursuant to R.C. 3109.04(F)(1)(a), the trial court agreed with the magistrate's finding that while appellant and appellee agreed that terminating the shared parenting plan is in the best interests of the child, they disagreed as to whom should be designated the residential parent and legal custodian. The magistrate determined this is a neutral factor between the parties.

{¶ 29} Pursuant to R.C. 3109.04(F)(1)(b), the magistrate held an in-camera interview of the minor child on February 25, 2019, when the child was 12 years old, and the trial court agreed with the findings. The magistrate found the child "possesses sufficient reasoning ability to express meaningful wishes and concerns regarding the allocation of parental rights and responsibilities * * * [and] has expressed to the Magistrate that he desires no contact with [appellant]." The magistrate found the child alleges, and appellant denies, that between the ages of three and eight years old, appellant "has touched his 'genitalia' and otherwise had touched him 'inappropriately' * * * [and] that [appellant] has made him sleep in the nude while visiting with him." The magistrate determined this factor favors appellee, although "the wishes of the child should be given somewhat diminished weight because of the failure to establish inappropriate conduct; further, however, the child's fear that [appellant] wanted to 'put mom in jail' has basis in fact because of the contempt action which has been pending."

{¶ 30} Pursuant to R.C. 3109.04(F)(1)(c), the trial court agreed with the magistrate's finding that prior to mid-September 2016, appellant "has been observed to enjoy a positive relationship with [the child] and that they engaged in age-appropriate

14.

activities together," but since then appellant "has exercised no parenting time with [the child]." The magistrate made further findings: that appellant's girlfriend and her son live with appellant and "there is no significant evidence of problems in the relationship between [the girlfriend] and [the child]"; that the child "resents [appellant] because of the child's belief that [appellant] loves [his girlfriend's son] more than he loves [the child]"; and that appellee, her husband, the child's half-sibling and two step-siblings in appellee's home enjoy a positive relationship with the child "with some occasional sibling rivalry," engage in age-appropriate activities together and, in the case of one step-sibling of the same age as the child, are "inseparable" when they are together. The magistrate determined this factor favors appellee.

{¶ 31} Pursuant to R.C. 3109.04(F)(1)(d), the trial court agreed with the magistrate's finding that both appellant and appellee maintain appropriate physical home environments with no safety or utility issues. The magistrate further found that the child earned primarily "B" grades in school, and despite 12 absences from school, "there is no evidence that the absences have impacted significantly his academic performance." The child, who plays sports, is perceived by school personnel "to be a 'jokester' who 'likes to have fun.'" The magistrate determined this factor favors appellee.

{¶ 32} Pursuant to R.C. 3109.04(F)(1)(e), the trial court agreed with the magistrate's finding that appellee's diagnosed medical issues do not impact her ability to work and "there is no evidence that [appellee] is unable to care properly for [the child]." The magistrate further found that appellant's mental health issues should not have a

bearing to provide adequate care for the child and that the forensic psychologist mistakenly determined appellant required specific sex therapy. The magistrate further found that the child's mental health status does not require psychological services, but he "can attend counseling as needed." The magistrate determined this is a neutral factor between the parties and the allegations of abuse against appellant "is given no weight because there is a failure to establish by a preponderance of competent, credible evidence that [appellant] engaged in any inappropriate behavior with [the child]."

{¶ 33} Pursuant to R.C. 3109.04(F)(1)(f) and (i), the trial court agreed with the magistrate's finding that "[appellee] is less likely than [appellant] to honor and facilitate court-approved parenting time rights or visitation and companionship rights" because "the parents have stipulated that, from 26 August 2016 through 05 December 2016 inclusive, '[Mother] has willfully failed to allow [Father] to exercise parenting time with the child * * * in violation of the orders of this Court.'" The magistrate further found that "[appellee] admits that she permitted [the] then ten-year-old [child] to make decisions on spending (or not spending) time with [appellant]." The magistrate determined that "the weight of the factor of [appellee's] continuous and willful denial of [appellant's] right to parenting time in accordance with the order of the Court is diminished significantly because she was acting on the advice of children's services and law enforcement authorities." The magistrate determined these factors favor appellant.

{¶ 34} Pursuant to R.C. 3109.04(F)(1)(g), the trial court agreed with the magistrate's finding that there is no evidence that appellant is either current with, or in

16.

arrears of, his court-ordered child support obligation. The magistrate determined this is a neutral factor between the parties.

{¶ 35} Pursuant to R.C. 3109.04(F)(1)(h) and (2)(c), the trial court agreed with the magistrate's finding that there is no evidence that appellant, appellant's girlfriend, appellee or appellee's husband have been convicted of or plead guilty to any criminal offense involving abuse or neglect of a child or domestic violence against a family or household member. "The Magistrate further finds, however, that [the child] has accused [appellant] of 'inappropriately' touching [the child's] 'genitalia.'" The magistrate determined this is a neutral factor between the parties.

{¶ 36} Pursuant to R.C. 3109.04(F)(1)(j), the trial court agreed with the magistrate's finding that neither appellant nor appellee "plan to establish a residence outside the State of Ohio." The magistrate determined this is a neutral factor between the parties.

{¶ 37} Pursuant to R.C. 3109.04(F)(2)(a), the trial court agreed with the magistrate's finding that originally the parties "were able to cooperate and make decisions jointly with respect to [the child]." After appellee learned about the allegedly inappropriate sexual contact in appellant's home, the magistrate found appellee's text messages to appellant on August 27 and 28, 2016, "are no 'olive branch'" when she requested to sit down together and discuss their minor child's allegations. The magistrate further found appellee's texts "clearly" indicate that appellee was not cooperative throughout the process when appellant repeatedly insisted "on compliance with the court

order or having the matter resolved by this Court." The magistrate further found that appellee "has never been interested in having [appellant] participate in counseling with [the child]." The magistrate further found that appellant made the judgment of putting his girlfriend's child "on an equal level" with his minor child. Specifically, the magistrate found that:

> [F]aced with what is likely the most challenging test of their ability to co-parent and make joint decisions in the best interest of their son, both [appellant] and [appellee] made horrible, damaging decisions resulting in detriment to themselves, to each other, and to [the child]. The Magistrate further finds that, of course, [appellee] and [appellant] wholly disregarded the provision in their amended shared parenting plan entitled "Problem Resolution around the Child."

The magistrate determined this factor favors appellant.

{¶ 38} Pursuant to R.C. 3109.04(F)(2)(b), the trial court agreed with the magistrate's finding that appellee, "through her text messages to [appellant] and allowing [the child] to make decisions on parenting time issues, clearly demonstrates she no longer has any ability to encourage the sharing of love, affection and contact between [the child] and [appellant]." The magistrate determined this factor favors appellant.

{¶ 39} Pursuant to R.C. 3109.04(F)(2)(d), the trial court agreed with the magistrate's finding that "the location of both parents' homes are in the same county, so

18.

this does not present a challenge to the exercise of shared parenting." The magistrate determined this is a neutral factor between the parties.

{¶ 40} Pursuant to R.C. 3109.04(F)(2)(e), the trial court agreed with the magistrate's finding that the guardian ad litem recommends appellee be named the residential parent and legal custodian of the minor child and that appellant have no contact with the child until appellant "'has engaged in individual counseling which specifically addresses the substantiated abuse allegations.'" The magistrate further found that appellant's allegation that appellee "has instilled fear in [the child] and has been placing lies in his head" was not established by a preponderance of competent, credible evidence." The magistrate determined this factor favors appellee.

{¶ 41} We reviewed the entire record and do not find the trial court's attitude was unreasonable, arbitrary or unconscionable when it determined the best interest of the child and terminated the shared parenting decree that contained a shared parenting plan. We do not find the trial court abused its discretion when it overruled appellant's objections to the magistrate's decision. *Bruns*, Slip Opinion Nos. 2019-1028 and 2019-1178, 2020-Ohio-4787, at ¶ 14.

### B. Reallocation of Parental Rights and Responsibilities

{¶ 42} Appellant further challenges the trial court's designation of appellee as the residential parent and legal custodian of the parties' minor child. R.C. 3109.04 governs the allocation of parental rights and responsibilities for the care of minor children of a marriage. We review a trial court's ruling on a motion to reallocate parental rights and

19.

responsibilities for the care of children for an abuse of discretion. *T.S. v. A.T.*, 6th Dist. Lucas No. L-19-1296, 2020-Ohio-6871, ¶ 35.

{¶ 43} R.C. 3109.04(E)(2)(d) governs the consequence of the trial court's termination of a prior final shared parenting decree under R.C. 3109.04(E)(2)(c): "the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under [R.C. 3109.04(A), (B), and (C)] as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made." The Ohio Supreme Court holds the plain language of R.C. 3109.04(E)(2)(d) only requires the trial court to determine the best interest of the child before it is compelled to issue a modified decree for the allocation of parental rights and responsibilities for the care of the children as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made. *Bruns* at ¶ 13. The "designation of residential parent and legal custodian is an integral part of the *decree* allocating parental rights and responsibilities." (Emphasis sic.). *Id.* at ¶ 19.

{¶ 44} As required by R.C. 3109.04(E)(2)(d), the trial court is to apply the best interest of the child factors applicable under R.C. 3109.04(A) through (C) as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made. *Id.* at ¶ 13, citing R.C. 3109.04(A)(1); R.C. 3109.04(B)(1). The trial court may in its discretion "interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation." *Id.* We find the provisions of

20.

R.C. 3109.04(C) do not apply in this matter, according to the magistrate's findings pursuant to R.C. 3109.04(F)(1)(h) and (2)(c), for which we previously determined the trial court did not abuse its discretion when it determined the best interest of the child.

{¶ 45} We reviewed the entire record and do not find the trial court's attitude was unreasonable, arbitrary or unconscionable when it reallocated parental rights and responsibilities for the care of the parties' minor children and designated appellee as the residential parent and legal custodian. We do not find the trial court abused its discretion when it overruled appellant's objections to the magistrate's decision. As recently stated by the Ohio Supreme Court, no abuse of discretion is found where "the trial court followed the plain language of the statute [R.C. 3109.04(E)(2)(d)] and awarded custody based on its determination of the child's best interest." *Bruns* at ¶ 14, citing R.C. 3109.04(A)(1).

{¶ 46} Appellant's first assignment of error is not well-taken.

### III. Parenting Time

{¶ 47} In support of his second assignment of error, appellant argues the trial court abused its discretion when it adopted the magistrate's determination that the R.C. 3109.051(D) factors were similar to the R.C. 3901.04(F)(1) factors when it only reviewed R.C. 3109.051(D)(2), (3), (4), (7), (8), (9), and (10). Appellant argues, "Had the court gone through and completed a full analysis of the statutory factors, a different outcome is likely to occur." Appellant further argues the trial court found factors supporting appellant were R.C. 3109.051(D)(10), (13) and (16), and the factors supporting appellee

21.

were R.C. 3109.051(D)(1) and (6). Appellant further argues the trial court found factors neutral to either party were R.C. 3109.051(D)(2), (3), (4), (7), (8), and (9). On balance, appellant argues that the trial court's failure to "properly" weigh the R.C. 3109.051(D) factors in appellant's favor for more parenting time is an abuse of discretion.

{¶ 48} "Modification of visitation rights is governed by R.C. 3109.051." *Braatz v. Braatz*, 85 Ohio St.3d 40, 706 N.E.2d 1218 (1999), paragraph one of the syllabus. R.C. 3109.051(O)(4) defines a "parenting time order," sometimes interchangeably called a visitation order, as "an order establishing the amount of time that a child spends with the parent who is not the residential parent or the amount of time that the child is to be physically located with a parent under a shared parenting order." The party requesting a change in visitation rights need make no showing that there has been a change in circumstances in order for the trial court to modify those rights, but the trial court shall determine visitation that is in the best interest of the child. *Braatz* at paragraph two of the syllabus. We review a trial court's determination on parenting time and visitation conditions pursuant to the 16 factors under R.C. 3109.051(D) for an abuse of discretion. *Id.*; *Kelley v. Kelley*, 6th Dist. Wood No. WD-19-073, 2020-Ohio-1535, ¶ 35.

{¶ 49} In a divorce involving a child where the trial court terminated a prior, final shared parenting decree and then designated one parent as the residential parent and legal custodian, in accordance with R.C. 3109.051(C), the trial court "shall make a just and reasonable order" permitting the non-residential parent "to have parenting time with the child at the time and under the conditions that the court directs," unless the court

22.

determines it is not in the child's best interest. R.C. 3109.051(A). When determining parenting time rights, the court "shall consider all other relevant factors, including, but not limited to, all of the factors listed in [R.C. 3109.051(D)]." R.C. 3109.051(C). One of the factors is a catchall: "Any other factor in the best interest of the child." R.C. 3109.051(D)(16). If the trial court fails to explicitly reference the R.C. 3109.051(D) factors, we may look to the entire record to determine if the factors were considered. *In re K.M.L.*, 9th Dist. Wayne No. 17AP0009, 2018-Ohio-344, 105 N.E.3d 509, ¶ 6.

{¶ 50} R.C. 3109.051(D) states, as it applies to this appeal:

> (D) In determining whether to grant parenting time to a parent pursuant to this section or [R.C. 3109.12] * * *, in establishing a specific parenting time or visitation schedule, and in determining other parenting time matters under this section or [R.C. 3109.12] * * *, the court shall consider all of the following factors:

> (1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity * * *;

> (2) The geographical location of the residence of each parent and the distance between those residences * * *;

> (3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

23.

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to [R.C. 3109.051(C)], regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent * * *, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights * * *;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has

acted in a manner resulting in a child being an abused child or a neglected child;

* * *

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

* * *

(16) Any other factor in the best interest of the child.

{¶ 51} We find appellant argues in his second assignment of error the trial court ignored the parenting time factors at R.C. 3109.051(D)(1), (5), (6), (11), (12), (13), (14), (15), and (16). We find the trial court adopted the magistrate's findings, which included, "Because the majority of the best interest factors in [R.C. 3109.051(D)] mirror those set forth in R.C. 3109.04(F)(1), the Magistrate hereby incorporates findings made herein above as if fully rewritten at this time." We further find the record confirms the trial court did not ignore the factors appellant disputes.

{¶ 52} We find R.C. 3109.051(D)(1) is substantially similar to R.C. 3109.04(F)(1)(c), and the trial court agreed with the magistrate's determination this factor favors appellee. Appellant concedes, "at the very least the relationship between [the

25.

child] and [appellant] are strained due to the beliefs of [the child], no matter the truth behind those beliefs."

{¶ 53} We further find that for R.C. 3109.051(D)(1) and (7), and the trial court agreed with the magistrate's finding that:

because the evidence fails to establish by a preponderance of competent, credible evidence that [appellant] has engaged in inappropriate conduct with [the child], the restrictions and conditions on parenting time for [appellant] recommended by Dr. Rindsberg and the Guardian are afforded substantially diminished weight. The Magistrate further finds that Dr. Rindsberg has indicated that [the child] can attend counseling as needed and that there is no indication of a need for psychological services. The Magistrate further finds that there is no psychotherapy indicated for [the child]. The Magistrate further finds that Dr. Rindsberg indicated that "[a]gain there are no signs of major mental illness for [appellant;] [appellant's] depression condition should not have a bearing on his ability to provide adequate care for [the child] or to interact with him at times." The Magistrate therefore finds that [appellant] presents no danger to the health and safety of [the child]. The Magistrate further finds, however, that counseling may be useful for [appellant] and [the child] to adjust to court-ordered contact between the two.

26.

The Magistrate further finds, however, that [appellant's girlfriend's] son, C.S., may present a risk to [the child's] health and safety. The Magistrate further finds that [appellant's girlfriend] seems to recognize that not having the boys together is advisable, indicating that she would probably not keep C.S. at [appellant's] residence during the initial time if [the child] came to make his primary residence with [appellant].

{¶ 54} We find R.C. 3109.051(D)(5) is substantially similar to R.C. 3109.04(F)(1)(d), and the trial court agreed with the magistrate's determination this factor favors appellee.

{¶ 55} We find R.C. 3109.051(D)(6) is substantially similar to R.C. 3109.04(F)(1)(b), and the trial court agreed with the magistrate's determination this factor favors appellee and assigned diminished weight to the child's wishes. Appellant concedes, "no matter the actual truth, [the child] has a strained relationship due to what he believes."

{¶ 56} We find R.C. 3109.051(D)(11) is substantially similar to R.C. 3109.04(F)(1)(h), and the trial court agreed with the magistrate's determination this is a neutral factor between the parties.

{¶ 57} We find R.C. 3109.051(D)(12) and (15) do not apply to the facts of the matter before us.

27.

{¶ 58} We find R.C. 3109.051(D)(13) is substantially similar to R.C. 3109.04(F)(1)(i), and the trial court agreed with the magistrate's determination this factor favors appellant.

{¶ 59} We find R.C. 3109.051(D)(14) is substantially similar to R.C. 3109.04(F)(1)(j), and the trial court agreed with the magistrate's determination this is a neutral factor between the parties.

{¶ 60} We find R.C. 3109.051(D)(16) is substantially similar to R.C. 3109.04(F)(1) requiring the court to "consider all relevant factors" and is reflected in the trial court's review of the entire record and its orders based on the best interest of the child.

{¶ 61} We further find R.C. 3109.051(D)(4) is reflected in the magistrate's analysis of R.C. 3109.04(F)(1)(b), (c), (d), (e) and (h) and disagree with appellant that the trial court agreed with the magistrate's determination that the combination of the underlying factors render R.C. 3109.051(D)(4) a neutral factor between the parties as opposed to favoring appellee.

{¶ 62} We further find R.C. 3109.051(D)(8) is reflected in the magistrate's analysis of R.C. 3109.04(F)(1)(c) and disagree with appellant that the trial court agreed with the magistrate's determination the combination of the underlying factors render R.C. 3109.051(D)(8) a neutral factor between the parties as opposed to favoring appellee.

{¶ 63} We reviewed the entire record and do not find the trial court's attitude was unreasonable, arbitrary or unconscionable. We find the trial court did not abuse its

28.

discretion when it determined, pursuant to R.C. 3109.051, appellant's parenting time schedule.

{¶ 64} Appellant's second assignment of error is not well-taken.

{¶ 65} On consideration whereof, the judgment of the Huron County Court of Common Pleas, Domestic Relations Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.